**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | |
|---|---|
| **ROBERT S. TYLER, SR.** and **DONELLA TYLER,** | ‖ |
| **Plaintiffs,** | ‖ |
| **v.** | ‖   CIVIL NO.  SA-05-CA-645-PM |
| **F. A. BARTLETT TREE EXPERT CO.,** | ‖ |
| **Defendant.** | ‖ |

**MEMORANDUM DECISION and ORDER**

Pursuant to the consent of the parties in the above-styled and numbered cause of action to trial by the undersigned United States Magistrate Judge[1] and consistent with the authority vested in the United States Magistrate Judges under the provisions of 28 U.S.C. § 636 (c)(1) and Appendix C, Rule 1(I) of the Local Rules for the Assignment of Duties to United States Magistrate Judges in the Western District of Texas, the following Memorandum Decision and Order is entered.

**I.  JURISDICTION**

The Court has jurisdiction under 28 U.S.C. §§ 1332 and 1441.

**II.  PROCEDURAL HISTORY**

On or about June 7, 2005, plaintiffs Robert S. Tyler, Sr., and Donella Tyler (the "Tylers" or "plaintiffs") filed their original petition against defendant F.A. Bartlett Tree Expert Company ("Bartlett" or "defendant") in the County Court at Law for Kerr County, Texas, in Cause No.

---

[1] Docket no. 13, 15, and 17.

CV050160.[2]  The Tylers have alleged violations of the Texas Deceptive Trade Practices-

Consumer Protection Act, Texas Business and Commerce Code §§ 71.41, et seq. ("DTPA"),

fraud, negligence, negligent misrepresentation, and breach of contract.[3]  With respect to the

DTPA claims, the Tylers allege Bartlett violated § 17.46(b) by:

> (a) engag[ing] in a false, misleading or deceptive act or practice;

> (b) represent[ing] that goods or services have sponsorship, approval, characteristics, uses or benefits which they do not have;

> (c) represent[ing] that goods or services are of a particular standard, quality, or grade, if they are of another;

> (d) represent[ing] that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, ow which are prohibited by law; and

> (e) fail[ing] to disclose information concerning goods or services which was known at the time of the transaction with the intention to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.[4]

In addition, the Tylers allege Bartlett breached implied warranties in violation of § 17.50(a).[5]

Plaintiffs' specific allegations include: "[d]efendant, by and through its agent, misrepresented his

expertise and qualifications" concerning the care and treatment of the lacey oak trees on the

Tylers' property; the treatment performed was inappropriate, "not in the correct manufacturer

recommended dosage," and incorrectly applied; and defendant "did not advise or recommend the

---

[2]  Docket no. 1 at 2 and exhibit B ("Plaintiffs' original petition").

[3]  Plaintiff's original petition at ¶¶ 10-23.

[4]  Id. at ¶ 11.

[5]  Id. at ¶ 12.

best options" for treatment, all of which precluded the Tylers from "mak[ing] an informed decision concerning the care and treatment of the trees."[6]  The Tylers seek economic and actual damages, multiple damages as provided by § 17.50(b)(1) of the DTPA, exemplary damages, pre and post judgment interest, attorney's fees, costs, and other relief to which they might be entitled.[7]

Bartlett filed its original answer on July, 1, 2005,[8] and on July 12, 2005, removed the case to federal court because the parties are diverse.[9]  On July 25, 2005, the Tylers filed a demand for jury trial.[10]  On August 15, 2005, plaintiffs filed a motion to remand[11] and an amended complaint adding Jordy Hagen as a defendant.[12]  Bartlett filed a motion to strike the amended complaint,[13] and the Tylers filed a notice voluntarily dismissing without prejudice the claims against Mr. Hagen.[14]  The District Court entered an Order striking the Tylers' amended complaint based on their voluntary dismissal of the claims against Mr. Hagen, denying as moot Bartlett's motion to

---

[6]  Id. at ¶ 7.

[7]  Id. ¶¶ 24-28 and prayer.

[8]  Docket no. 1, exhibit B (defendant's original answer).

[9]  Docket no. 1 at 1.

[10]  Docket no. 2.

[11]  Docket no. 5.

[12]  Docket no. 6.

[13]  Docket no. 7.

[14]  Docket no. 10.

strike, and denying plaintiffs motion to remand.[15]  Because the parties consented to trial before a

Magistrate Judge, the case was assigned to the undersigned on October 10, 2005.[16]

On December 2, 2005, Bartlett filed its first amended answer and counterclaim.[17]  The

Tylers filed an answer to the counterclaim.[18]  On June 30, 2006, Bartlett filed a motion for

summary judgment,[19] and on July 3, 2006, filed its second amended answer and first amended

counterclaim for breach of contract based on the Tylers' alleged failure to pay $3,312.25 owed

for services performed on their oak trees plus pre and post-judgment interest, and seeking

attorney's fees under the DTPA, costs, and other relief to which it might be entitled.[20]  A

response and reply to the motion for summary judgment have been filed.[21]  In addition, on

August 11, 2006, plaintiffs filed a "response" to defendant's reply.[22]

### III.  STATEMENT OF FACTS

Unless otherwise noted, the parties do not appear to contest the following facts which are

construed in favor of the Tylers as the non-movants.  The facts are derived from the statement of

---

[15]  Docket no. 11.

[16]  Docket nos. 13, 15, and 17.

[17]  Docket nos. 24 and 25.

[18]  Docket no. 27.

[19]  Docket no. 36.

[20]  Docket no. 38.

[21]  Docket nos. 42 and 43.

[22]  Docket no. 45.  Although there is no provision in the rules for responses to replies, because most of the document responds to defendant's objections to plaintiffs' summary judgment evidence included within defendant's reply, the Court has considered the response.

uncontroverted facts included in Bartlett's motion for summary judgment, which the Tylers have not contested, and from the evidence attached to defendant's motion.[23]

Plaintiffs Robert Tyler, Sr., and Donella Tyler reside in Kerrville, Texas.[24]  In approximately 2001, Mark Duff, an arborist representing the Texas Forest Service, inspected the Tylers' property and "diagnosed oak wilt in a mott of lacey oaks."[25]  Although there is no known cure for oak wilt,[26] the Texas Forest Service recommends two options for treating the disease -- trenching to sever root grafts and systemic root flair injections with Alamo fungicide.[27]  The Texas Forest Service also recommends "a minimum of a one hundred foot buffer between infected and uninfected trees" for trenching to be effective.[28]  Mr. Duff recommended the Tylers' trees be treated with Alamo fungicide and recommended defendant F.A. Bartlett Tree Expert Company to provide the treatment.[29]

In September 2001, the Tylers requested that Bartlett inspect, diagnose, and recommend treatment for the oak trees on their property.[30]  Bartlett, a Connecticut company, provides

---

[23]  Docket no. 36.

[24]  Id. at 2 and exhibit D (plaintiffs' original petition) at ¶ 2.

[25]  Id., exhibit A at tab 1 (January 31, 2005 letter from Mark Duff).

[26]  Id. at 3, exhibit A (affidavit of John D. Worrell, Jr., certified arborist and Manager of Bartlett's San Antonio office) and tab 1.

[27]  Id. at 4, exhibit A.

[28]  Id. at 2, exhibit A at tab 1.

[29]  Id., exhibit A at tab 1 and exhibit C (excerpt from Robert Tyler, Sr.'s deposition testimony) at 39-41.

[30]  Id. at 3, exhibit A, and tab 2 (various documents regarding services Bartlett provided)

"professional arboricultural services, including scientific diagnostics and treatments designed to protect and improve tree and shrub health."[31]  Bartlett adheres to Texas Forest Service standards in providing professional arborist services for oak wilt disease.[32]  The arborists employed by Bartlett are certified by the International Society of Arboriculture and most have bachelor's degrees in biology, horticulture, forestry, landscape management, and other related fields.[33] Jordy A. Hagen was Bartlett's representative in the Kerrville area.[34]  Mr. Hagen is an arborist certified by the International Society of Arboriculture in 1997 and the current the Vice President of the Texas Chapter of the International Society of Arboriculture.[35]  Mr. Hagen was employed by Bartlett from 1998 through July 2004 and his responsibilities included "consulting, diagnostics, and making proposals for tree and shrub care.[36]

Mr. Hagen met with the Tylers at their residence.[37]  Mr. Tyler told Mr. Hagen of Mark Duff's diagnosis and recommendation to treat the oak wilt with Alamo fungicide.[38]  Mr. Tyler pointed out the specific trees designated for treatment.[39]  The Tylers had been informed trenching

---

[31]  Id. at 2, exhibit A.

[32]  Id. at 4, exhibit A.

[33]  Id. at 2, exhibit A.

[34]  Id. at 3, exhibit B (affidavit of Jordy A. Hagen).

[35]  Id.

[36]  Id.

[37]  Id.

[38]  Id.

[39]  Id.

was one option for treating oak wilt.[40]  Mr. Hagen discussed trenching with the Tylers but did not

recommend trenching as an appropriate treatment on their property.[41]  Bartlett does not provide

trenching services to treat oak wilt and did not provide such services in 2001 through 2004.[42]

Mr. Hagen concurred with Mr. Duff's recommendation to treat the trees with root flair injections

of Alamo fungicide.[43]  Mr. Hagen informed the Tylers there was no known cure for oak wilt and

the injection was designed to aid in preserving trees.[44]  Mr. Tyler was aware there was no

recognized cure for oak wilt.[45]  Mr. Hagen informed plaintiffs "there was no guarantee as to the

outcome or whether the recommended injection treatments would be successful and further

disclosed that, just like treating a cancer patient, chemical injections are a high risk treatment.[46]

The Tylers contracted with Bartlett to perform "root flair injection with Alamo fungicide

to certain tagged oaks for oak wilt treatment, along with other proposed treatments for mite and

aphid infestations."[47]  Bartlett provided the initial treatments in August 2002, and plaintiffs

contracted for additional treatments in April 2003 and March 2004.[48]  The Tylers do not dispute

---

[40]  Id. at 4, exhibit B, exhibit C at 41.

[41]  Id., exhibit B.

[42]  Id., exhibit A.

[43]  Id. at 4-5, exhibit B; see also exhibit A at tab 1.

[44]  Id. at 5, exhibit B.

[45]  Id., exhibit C at 64-66.

[46]  Id., exhibit B; see also exhibit C at 114-115.

[47]  Id., exhibit A.

[48]  Id. at 6, exhibit A and tab 1.

that defendant performed the services for which they contracted.[49]

In August 2004, John D. Worrell, Jr., the Manager of Bartlett's San Antonio, Texas office, met with the Tylers, inspected the oaks at issue, and attempted to address plaintiffs' complaints.[50]  Mr. Worrell is an arborist certified by the International Society of Arboriculture in 1993 and has a Bachelor of Science degree in forestry.[51]  In June 2006, Mr. Worrell was certified by the Texas Chapter of the International Society of Arboriculture and the Texas Forest Service as a "first responder" for addressing oak wilt.[52]  Mr. Worrell is "qualified as a consultant in most aspects of tree and shrub care and maintenance, including diagnosis and recommended treatment for oak wilt."[53]  As Mr. Hagen, Mr. Worrell concluded injections of Alamo fungicide were the only viable option for treating the oak wilt on the Tylers' property.[54]  Mr. Hagen and Mr. Worrell concluded Bartlett's services had been properly performed in accordance with industry standards.[55]  The Tylers have not paid Bartlett for the treatments rendered pursuant to the March 2004 agreement.[56]  The current principal balance plaintiffs owe defendant is $3,312.25.[57]

---

[49] Id., exhibit A, exhibit C at 59, 63-64.

[50] Id., exhibit A.

[51] Id.

[52] Id. at 6-7 and exhibit A.

[53] Id. at 7 and exhibit A.

[54] Id., exhibits A and B.

[55] Id.

[56] Id. at 6, exhibit A.

[57] Id. at 8, exhibit A.

## IV.  ISSUES

1.      Whether Bartlett is entitled to summary judgment on plaintiffs' claims.

2.      Whether Bartlett is entitled to summary judgment on its
        counterclaim.

## V.  SUMMARY JUDGMENT STANDARD

The standard to be applied in deciding a motion for summary judgment is set forth in

Federal Rule of Civil Procedure 56, which provides in pertinent part as follows:

> The judgment sought shall be rendered forthwith if the pleadings, depositions,
> answers to interrogatories, and admissions on file, together with the affidavits,
> if any, show that there is no genuine issue as to any material fact and that the
> moving party is entitled to judgment as a matter of law.[58]

Mere allegations of a factual dispute between the parties will not defeat an otherwise proper

motion for summary judgment.  Rule 56 requires that there be no genuine issue of material fact.[59]

A fact is material if it might affect the outcome of the lawsuit under the governing law.[60]  A

dispute about a material fact is genuine if the evidence is such that a reasonable trier of fact could

return a verdict for the nonmoving party.[61]  Therefore, summary judgment is proper if, under

governing laws, there is only one reasonable conclusion as to the verdict; if reasonable finders of

fact could resolve a factual issue in favor of either party, summary judgment should not be

---

[58]  FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552
(1986).

[59]  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2510 (1986).

[60]  Anderson, 477 U.S. at 248, 106 S.Ct. at 2510; Thomas v. LTV Corp., 39 F.3d 611, 616
(5th Cir. 1994).

[61]  Anderson, 477 U.S. at 248, 106 S.Ct. at 2510; Wise v. E.I. DuPont De Nemours & Co.,
58 F.3d 193, 195 (5th Cir. 1995).

granted.[62]

The movant on a summary judgment motion bears the initial burden of providing the court with a legal basis for its motion and identifying those portions of the record which it alleges demonstrate the absence of a genuine issue of material fact.[63]  The burden then shifts to the party opposing the motion to present affirmative evidence in order to defeat a properly supported motion for summary judgment.[64]  All evidence and inferences drawn from that evidence must be viewed in the light favorable to the party resisting the motion for summary judgment.[65]  Thus, summary judgment motions permit the Court to resolve lawsuits without the necessity of trials if there is no genuine dispute as to any material facts and the moving party is entitled to judgment as a matter of law.[66]

The movant may satisfy the burden to show the "absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim."[67]  If non-movant cannot provide some evidence to support its claim, summary judgment is appropriate.[68]

When plaintiff moves for summary judgment, it must affirmatively demonstrate that there

---

[62]  Anderson, 477 U.S. at 249, 106 S.Ct. at 2510-11.

[63]  Celotex Corp., 477 U.S. at 323, 106 S.Ct. at 2553.

[64]  Anderson, 477 U.S. at 257, 106 S.Ct. at 2514.

[65]  Hibernia Nat'l Bank v. Carner, 997 F.2d 94, 97 (5th Cir. 1993).

[66]  See Fields v. City of South Houston, Tex., 922 F.2d 1183, 1187 (5th Cir. 1991).

[67]  Stahl v. Novartis Pharmaceuticals Corp., 283 F.3d 254, 263 (5th Cir.), cert. denied, 537 U.S. 824, 123 S.Ct. 111 (2002).

[68]  Stahl, 283 F.3d at 263.

is no genuine issue of material fact as to each element of its causes of action.[69]  If defendant as

the non-movant cannot provide some evidence to showing a genuine issue of fact, summary

judgment is appropriate.[70]

## VI.  ARGUMENTS AND CONCLUSIONS OF LAW

### A.    DTPA Claims

#### 1.    Summary of Arguments

Defendant F.A. Bartlett Tree Expert Company has moved for summary judgment on the

Tylers' DTPA claims, arguing that it is exempt from the claims pursuant to the professional

services exemption provided by § 17.49(c) of the DTPA.[71]  Bartlett argues, in sum, that although

the DTPA does not include a definition for "professional," Texas courts have provided a

definition which applies to the services it provided to the Tylers.[72]  In particular, Bartlett argues

the evidence shows it "is in the business of providing professional arborist services and scientific

services in the tree care industry," which was the basis for plaintiffs' decision to enter a contract

with defendant.[73]  Bartlett asserts the evidence also establishes the services at issue "were

performed by certified professional arborists who through specialized education, training, and

experience are qualified to consult, diagnose, and recommend treatments to its customers

_____

[69]  Fontenot v. Upjohn Co., 780 F.2d 1190, 1195 (5th Cir. 1986).

[70]  Stahl v. Novartis Pharmaceuticals Corp., 283 F.3d 254, 263 (5th Cir.), cert. denied, 537 U.S. 824, 123 S.Ct. 111 (2002).

[71]  Docket no. 36 at 8-11.

[72]  Id. at 9.

[73]  Id.

pertaining to tree care and maintenance, including treatment for oak wilt."[74]  With respect to the

recommended option and treatment provided for oak wilt, Bartlett argues these were matters of

professional judgment and skill.[75]  To support its summary judgment arguments, Bartlett has

cited the affidavits of Mr. Worrell and Mr. Hagen; excerpts from Mr. Tyler's deposition

testimony; Mr. Duff's January 31, 2005 letter; and plaintiffs' original petition.[76]

In response, the Tylers argue Bartlett's reliance on the professional services exemption is

misguided because they "paid Bartlett to properly diagnose and treat their oak trees, much as a

mechanic determines the cause of a problem with a car engine and then repairs it."[77]  Citing case

law decided before the professional services exemption became effective,[78] the Tylers argue

service providers such as burial services, real estate agents, banks, and title companies have been

subjected to liability under the DTPA.[79]  In addition, plaintiffs note the authority cited by Bartlett

is related to insurance coverage rather than the DTPA.[80]  In a section captioned "Bartlett made

express misrepresentations of material facts, failed to disclose information, committed

unconscionable actions, and breached express warranties," the Tylers cite evidence apparently

---

[74] Id.

[75] Id. at 10.

[76] Id., exhibits A and tab 1, B, C, and D.

[77] Docket no. 42 at 1-2.

[78] See Stafford v. Lunsford, 53 S.W.3d 906, 910 (Tex. App.–Houston [1st Dist.] 2001, pet. denied) ("This amendment covers suits . . . filed on or after September 1, 1996.  See Act of May 19, 1995, 74th Leg., R.S., ch. 414, § 20(b), 1997 Tex. Gen. Laws 2988, 3004.").

[79] Docket no. 42 at 2.

[80] Id.

intended to raise genuine issues of material fact about applicability of the exceptions to the professional services exemption provided in § 17.49(c).[81]  In particular, the Tylers contend the evidence shows: Mr. Hagen represented Bartlett was experienced at treating lacey oak trees and had an "80% success rate treating lacey oaks;"[82] defendant had never treated lacey oaks; Dr. Bruce Frederick, a senior researcher and executive with Bartlett admitted defendant "did not have much experience with lacey oaks, and if they had it to do over again, would have recommended trenching;" defendant did not inform plaintiffs "the only effective way to stop the spread of oak wilt was to physically sever the roots between trees" or that trenching was the best alternative; defendant knew from information provided by the manufacturer of Alamo that trenching is the most reliable way to stop oak wilt;[83] Mr. Hagen told the Tylers he could not recommend trenching at the time but might later; and Mr. Hagen recommended treatment with Alamo.[84]

Without specific citations, plaintiffs contend

> evidence attached to Bartlett's motion for summary judgment shows that it recommended ineffective and costly treatments to Tyler, that it knew the treatment would not be effective, that it knew there was an effective treatment–trenching–which was the industry standard, but Bartlett[] did no event offer it.  Further, Bartlett held itself out as a professional, and knew that Tyler would rely on Bartlett's representations.[85]

Finally, the Tylers argue Bartlett's conduct was "part and pattern of unconscionable conduct

---

[81]  Id. at 2-5.

[82]  Id. at 2.

[83]  Id. at 3.

[84]  Id. at 4.

[85]  Id.

directed toward property owners in the Texas Hill Country."[86]  In support of their arguments, the Tylers have proffered excerpts from Mr. Tyler's deposition testimony and a document produced by defendant from Rainbow Treecare Scientific Advancements captioned "Isolation."[87]

In reply, Bartlett reiterates the argument that the professional services exemption is applicable and further argues the Tylers "admit that Bartlett held itself out as a 'professional' service and they relied upon such professional services."[88]  Bartlett argues the professional arborist services it provided are more akin to services provided by the medical profession rather than the occupations or services plaintiff's listed.[89]  Bartlett contends the opinion and recommendation of its certified arborist was consistent with that of Mr. Duff, the independent arborist from the Texas Forest Service.[90]  In the event the professional services exemption does not bar the Tylers' claims, Bartlett argues alternatively that plaintiffs have failed to present affirmative evidence raising genuine issues of material fact regarding the DTPA claims.[91]  Bartlett also objects to and asks the Court to strike portions of plaintiffs' summary judgment evidence,[92] to which plaintiffs have responded.[93]

---

[86]  Id.

[87]  Id., exhibits A and B.

[88]  Docket no. 43 at 2.

[89]  Id.

[90]  Id. at 3.

[91]  Id.

[92]  Id. at 1 n. 1.

[93]  Docket no. 45.  The Court, cognizant that evidence presented in support of a motion for summary judgment must be admissible under the rules of evidence, see FED. R. CIV. P. 32(a) and

2.   **Analysis**

The DTPA "protect[s] consumers against false, misleading, and deceptive business practices, unconscionable actions, [and failures to disclose] . . . in the course of any trade."[94]  The elements of a DTPA claim are: (1) plaintiff is a consumer (2) who was victimized by false, misleading, or deceptive acts, failures to disclose, or an unconscionable act, (3)which was the producing cause of plaintiff's damages.[95]

The DTPA does not apply to acts based on "the rendering of a professional service, the essence of which is the providing of advice, judgment, opinion, or similar professional skill."[96] The professional services exemption does not apply to: (a) misrepresentations of material fact that cannot be characterized as advice, judgment, or opinion; (b) failure to disclose in violation of § 17.46(b)(24); (c) an unconscionable action or course of action that cannot be characterized as advice, judgment, or opinion; (d) breach of an express warranty that cannot be characterized as advice, judgment or opinion; or (e) a violation of § 17.46(b)(26).[97]

---

56(e), overrules Bartlett's objections to certain of plaintiffs' evidence, and, to the extent defendant's reply can be construed to include a motion to strike, denies the motion.  The Tylers' evidence has been considered to the extent it is relevant, based on personal knowledge, and is not hearsay, impermissible opinion testimony, conclusory, speculative, or an unsubstantiated assertion.  See Doe v. Beaumont Indep. Sch. Dist., 173 F.3d 274, 300 (5th Cir. 1999) (en banc); Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc); see Hanchey v. Energas Co., 925 F.2d 96, 97 (5th Cir. 1990) (legal conclusions and general allegations will not support or defeat motion for summary judgment).

[94]   Streber v. Hunter, 221 F.3d 701, 727 (5th Cir. 2000) (citing TEX. BUS. & COM. CODE §§ 17.44, 17.46(a)).

[95]   Id.

[96]   TEX. BUS. & COM. CODE § 17.49(c) (Vernon Supp. 2006).

[97]   Id. at § 17.49(c)(1-5).

The DTPA does not include a definition for "professional services" but Texas courts have addressed the definition in the context of an insurance policy.[98]  Under these cases, professional service is more that an ordinary task.[99]  To be a professional service, "the task must arise out of acts particular to the individual's specialized vocation."[100]  An act is not

> a professional service merely because it is performed by a professional.  Rather, it must be necessary for the professional to use his specialized knowledge or training.[101]

The labor and skill involved is "predominately mental or intellectual, rather than physical or manual."[102]  Texas courts have applied these principles in DTPA cases.[103]

**professional services exemption**

Bartlett has cited evidence showing it is in the business of providing "professional arboricultural services, including scientific diagnostics designed to protect and improve trees and

---

[98]  See Atlantic Lloyd's Ins. Co. of Tex. v. Susman Godfrey, L.L.P., 982 S.W.2d 472, 477 (Tex. App.–Dallas, 1998, pet. denied); Duncanville Diagnostic Ctr., Inc. v. Atlantic Lloyd's Ins. Co. of Tex., 875 S.W.2d 788, 790 (Tex. App.–Eastland 1994, writ denied).

[99]  Susman Godfrey, 982 S.W.2d at 477.

[100]  Id.

[101]  Id.

[102]  Duncanville Diagnostic, 875 S.W.2d at 790.

[103]  See Omni Metals, Inc. v. Poe & Brown of Tex., Inc., No. 14-00-01081-CV, 2002 WL 1331720, at * 8-9 (Tex. App.–Houston [14th Dist.] June 13, 2002, pet. denied) (not designated for publication); Nast v. State Farm Fire & Cas. Co., 82 S.W.3d 114, 122 (Tex. App.–San Antonio 2002, no pet.); Shands v. Texas State Bank, No. 04-00-00133-CV, 2001 WL 21490, at * 10 (Tex. App.–San Antonio Jan. 10, 2001, no pet.) (not designated for publication); see also Trusky v. Holoway, No. 14-04-00196-CV, 2005 WL 1150033, at * 3 (Tex. App.–Houston [14th Dist.] May 17, 2005, no pet.).

shrubs."[104]   The arborists working for Bartlett are certified by the International Society of

Arboriculture and many hold college degrees in forestry, horticulture, landscape management,

biology, or other related fields.[105]   Mr. Hagen, Bartlett's representative who was responsible for

the services at issue, is certified by the International Society of Arboriculture and is the vice

president of its Texas Chapter.[106]   Mr. Hagen studied landscape and arboriculture at Olds College

in Alberta, Canada.[107]   Mr. Hagen relied on his specialized education, training, and experience in

rendering an opinion on the diagnosis and recommended treatment of the Tylers' oak trees.[108]

Based on this evidence, unless exceptions apply, the professional services exemption bars the

Tylers' DTPA claims against Bartlett to the extent the essential nature of the services at issue

was providing advice, judgment, opinion, or similar professional skill.[109]

---

[104]   Docket no. 36, exhibit A at ¶ 3.

[105]   Id.

[106]   Id., exhibit B at ¶ 2.

[107]   Id.

[108]   Id. at ¶ 6.

[109]   See Rangel v. Lapin, 177 S.W.3d 17, 24 (Tex. App.–Houston [1st Dist.] 2005, pet. denied) (attorney and law firm's representations "were the type of advice, judgment, or opinion that the legislature specifically intended to exempt from the DTPA"); Head v. U.S. Inspect DFW, Inc., 159 S.W.3d 731, 741 (Tex. App.–Fort Worth 2005, no pet.) (home inspector); Macurak, v. Doyle, No. 05-01-00823-CV, 2002 WL 1263900, at * 4 (Tex. App.–Dallas, Jun. 7, 2002, pet. denied) (not designated for publication) (psychologist and psychiatrist); Chemd, Inc. v. KPMG Peat Marwick., L.L.P., No. 05-00-00816-CV, 2001 WL 893989, at * 6 (Tex. App.–Dallas, Aug. 9, 2001, pet. denied) (not designated for publication) (accounting firm); Shands, 2001 WL 21490 at * 10 (bank in trustee capacity).  The Court has noted plaintiffs' contention, in its response to defendant's reply, that if defendant's are correct that "a tree treating company is a 'professional' that is exempt from the DTPA . . . then mechanics, who now use sophisticated electronic diagnostic machines to diagnose and repair engine problems, often involving computers, would also be exempt."  Docket no. 45 at 2.  But, the Court is not persuaded by the attempted analogy under the facts presented here.

Whether plaintiffs' DTPA claims might fall within an exception to the professional services exemption depends on the nature of the claims pleaded.  As set forth in the procedural history, the Tylers have alleged violations under the DTPA for: engaging false misleading, or deceptive acts or practices; misrepresenting goods or services; misrepresenting the rights, remedies, or obligations conferred by an agreement; failure to disclose information; and breach of implied warranties.[110]  Of these, only the claim for failure to disclose information, a violation of § 17.46(b)(24), is clearly an exception to the professional services exemption for which Bartlett may be sued.[111]  The remainder of the claims fall within the exemption unless the Tylers' evidence suggests an exception is applicable.

The Tylers have alleged Bartlett misrepresented its expertise and qualifications for treating oak wilt[112] and cite Mr. Tyler's deposition testimony to support the allegations.[113]  Mr. Tyler's deposition testimony reflects Mr. Hagen said Bartlett had an eighty percent success rate with Alamo treatment in unchallenged trees[114] and gave the impression defendant had "the most current knowledge and the greatest experience in the treatment of oak wilt in the State of Texas."[115]  To the extent Mr. Tyler's deposition testimony is proper summary judgment evidence, plaintiffs have raised a question about whether Mr. Hagen made representations of fact.  But

---

[110]  Plaintiffs' original petition at ¶¶ 11 and 12.

[111]  See TEX. BUS. & COM. CODE ANN. § 17.49(c)(2).

[112]  Plaintiffs' original petition at ¶ 9.

[113]  Docket no. 42 at 2-4.

[114]  Id., exhibit A at 113.

[115]  Id., exhibit A at 166.

even construing Mr. Tyler's testimony in plaintiffs' favor, and plaintiffs have not raised a genuine issue of material fact about whether Mr. Hagen's representations were false such that they might be excepted from the professional services exemption as misrepresentations of material fact.  The Tylers cite no evidence showing Bartlett's expertise, qualifications, and success rate for treating oak wilt with Alamo treatments were not as Mr. Hagen represented.  Although Mr. Tyler testified that Bartlett had "no experience" with lacey oaks,[116] Mr. Tyler's conclusory statements are not supported by the record.  Specifically, plaintiffs' evidence reflects Bartlett had at least some experience in treating lacey oak trees.[117]  Because the Tylers have not raised a genuine issue of material fact regarding whether Bartlett's representations about its expertise, qualifications, experience, and success rate were misrepresentations of material fact, Bartlett is entitled to summary judgment.

The Tylers also allege "the treatment performed (a) was inappropriate for lacey oak trees; (b) was not in the correct manufacturer recommended dosage; and (c) was incorrectly applied in the trunks rather than the root flares of the trees."[118]  To the extent these allegations may be construed as violations of the DTPA, the Tylers have cited no supporting evidence.  Even

---

[116]  Id., exhibit A at 129; see also at 113.

[117]  Id., exhibit A at 168.  Plaintiffs cite Mr. Tyler's testimony regarding a telephone conversation with Dr. Bruce Frederick who was apparently employed by Bartlett in 2004.  Id. at 167. Mr. Tyler's testimony seems to indicate Dr. Frederick said Bartlett "did not have much experience in the treatment of lacey oaks."  Id. at 168.  The Tylers' evidence does not reflect how Dr. Frederick might be qualified to offer an opinion about Bartlett's experience or the treatment of oak trees and Mr. Tyler's testimony is based on hearsay offered to prove the matter asserted.  Nevertheless, even construing this testimony in plaintiffs' favor, it does not support Mr. Tyler's testimony of "no experience."

[118]  Plaintiffs' original petition at ¶ 9.

assuming there is supporting evidence, the Tylers have not controverted Bartlett's evidence showing the treatment at issue was based on the professional advice, judgment, or opinion of defendant and its employees.  Accordingly, the Tylers have not raised a genuine issue of material fact about whether the claim of inappropriate and incorrect treatment falls within an exception to the professional services exemption.  More importantly, the Tylers have proffered not evidence suggesting the treatment was inappropriate or incorrect.  Therefore, Bartlett is entitled to summary judgment on the claim that it violated the DTPA by providing inappropriate and incorrect treatments for oak wilt.

The Tylers have alleged Bartlett misrepresented the rights, remedies, or obligations conferred by an agreement and breached implied warranties of fitness for a particular purpose and good and workmanlike performance.[119]  Plaintiffs' summary judgment response does not address these claims.  In particular, the Tylers have not argued the alleged misrepresentation of rights, remedies, or obligations conferred by an agreement or breaches of implied warranties fall with in an exception to the professional services exemption or explained how evidence they proffered raises a genuine issue of material fact about whether such misrepresentations were made or implied warranties were breached.  Accordingly, Bartlett is entitled to summary judgment on the Tylers' DTPA claims for misrepresentation of the rights, remedies, or obligations conferred by an agreement and breach of implied warranties.

In their summary judgment response, the Tylers have raised the issues of unconscionable conduct and breach of an express warranty.[120]  These claims could fall within exceptions to the

---

[119]  Plaintiffs' original petition at ¶ 12.

[120]  Docket no. 42 at 2 and 4.

professional serviced exemption,[121] but they were not alleged in plaintiffs' original petition. Even assuming the claims have been properly pleaded, the Tylers have failed to raise a genuine issue of material fact about whether the claims are exceptions to the professional services exemption to the DTPA.   With respect to unconscionable conduct, the Tylers merely proffer the conclusory argument "Bartlett's conduct toward Tyler was unconscionable, and part of a pattern of unconscionable conduct directed toward property owners in the Texas Hill Country" and cite the definition of "unconscionable action," including taking advantage of the consumer's "lack of knowledge, ability, experience, or capacity."   The Tylers have not cited evidence suggesting Bartlett took advantage of them or others.   As discussed more fully in the next section, the Tylers have not controverted evidence showing plaintiffs knew trenching and Alamo injections were alternate treatments for oak wilt, with trenching being more effective if minimum distances for buffer areas were satisfied.   With respect to express warranties, other than mentioning "breached express warranties" in a caption in their response,[122] the Tylers did not discuss the breach or cite evidence suggesting the existence of an express warranty or the occurrence of a breach.   Because plaintiffs did not plead causes of action for unconscionable conduct or breach of an express warranty and cite no evidence to raise a genuine issue of material fact about whether these claims are exceptions to the professional services exemption, the exemption is applicable and Bartlett is entitled to summary judgment.

**failure to disclose**

The Tylers appear to allege Bartlett failed to disclose information when it "did not advise

---

[121]   TEX. BUS. & COM. CODE ANN. § 17.49(c)(3), (4).

[122]   See docket no. 43 at 2.

or recommend the best options to Plaintiffs in accordance with industry standards for treating oak trees."[123]  Section 17.46(b)(24) of the DTPA provides a cause of action for failure to disclose information.[124]  As discussed, alleged violations of § 17.46(b)(24) are excepted from the professional services exemption, and Bartlett must show that it is entitled to summary judgment on the claim.[125]

The elements of a DTPA claim for failure to disclose are: "(1) failure to disclose information concerning goods or services, (2) which was known at the time of the transaction, (3) if such failure was intended to induce the consumer into a transaction, (4) which the consumer would not have entered had the information been disclosed."[126]  "Nondisclosure without evidence that a defendant had knowledge of the undisclosed information and intentionally withheld the information is insufficient to establish a violation of the DTPA."[127]

Based on the Tylers' summary judgment response and evidence, Bartlett allegedly failed to disclose information about trenching as treatment for oak wilt.[128]  Bartlett has presented Mr. Worrell's affidavit testimony that the "Texas Forest Service recommends two options for

---

[123]  Plaintiffs' original petition at ¶ 9.

[124]  TEX. BUS. & COM. CODE ANN. § 17.46 (b)(24).

[125]  Id. at § 17.49(c)(2).

[126]  Willowbrook Foods, Inc. v. Grinnell Corp., 147 S.W.3d 492, 506-07 (Tex. App.–2004, pet. denied, pet. for rehearing filed Jul. 12, 2006) (citing TEX. BUS. & COM. CODE ANN. § 17.46(b)(24)).

[127]  Id. at 507 (citing Chandler v. Gene Messer Ford, Inc., 81 S.W.3d 493, 502 (Tex. App.–Eastland 2002, pet. denied)).

[128]  Docket no. 42 at 3-5.

treatment of oak wilt disease: (1) trenching designed to sever root grafts; and (2) systemic root injections of Alamo fungicide."[129]  For trenching to be effective, the Texas Forest Service recommends a minimum one hundred foot buffer between infected and uninfected trees.[130] Bartlett cites Mr. Tyler's testimony that Mr. Duff, a Texas Forest Service representative, inspected the Tylers' oak trees, explained trenching was very expensive but the most effective course of action, and questioned whether the distances were proper for trenching on plaintiffs' property.[131]  Bartlett's evidence shows Mr. Duff recommended treatment with Alamo fungicide,[132] and Mr. Worell and Mr. Hagen concurred with Mr. Duff's recommendation.[133] Bartlett cites Mr. Hagen's affidavit testimony showing that when Mr. Hagen inspected plaintiffs' trees, Mr. Tyler said he was aware trenching was a recommended treatment and the two men discussed the minimum distance recommended for effective trenching.[134]  Because there was not a one hundred foot buffer between the infected and uninfected trees on the Tylers' property, Mr. Hagen advised trenching was not an appropriate treatment.[135]

Bartlett's evidence shows: the Tylers discussed trenching with Mr. Duff and Mr. Hagen, knew trenching was the most effective treatment for oak wilt, were informed of the minimum

---

[129]  Docket no. 36, exhibit A at ¶ 5.

[130]  Id.

[131]  Id., exhibit C at 39.

[132]  Id., exhibit A at tab 1.

[133]  Id.. exhibit A at ¶¶ 10 and 11; exhibit B at ¶ 6.

[134]  Id., exhibit B at ¶ 5.

[135]  Id.

distances for effective trenching, and were told the distances between the infected and uninfected trees on their property were not sufficient for trenching.  Unless the Tylers have proffered controverting evidence, Bartlett is entitled to summary judgment on the failure to disclose claim.

To raise a genuine issue of material fact regarding failure to disclose, plaintiffs cite Mr. Tyler's deposition testimony that Bartlett did not inform him trenching was the best option for treating oak wilt[136] and cite defendant's admission that it did not provide trenching services at the time in issue.[137]  But, plaintiffs cite Mr. Tyler's testimony that he discussed trenching with Mr. Hagen who would not recommend trenching as a course of action,[138] and Mr. Tyler relied on Mr. Hagen's recommendation.[139]  The Tylers have also proffered what appears to be an advertisement produced by Bartlett from the manufacturer of Alamo stating "the most effective way to stop the spread [of oak wilt] is to physically sever the roots between the trees."[140]  The advertisement also states "[t]rees within the trench lines or trees that cannot be trenched are good candidates for Alamo injection."[141]

Construing the evidence in a light favorable to the Tylers, the evidence shows trenching is

---

[136]  Docket no. 36, exhibit C at 129-30.  Although plaintiffs cite to pages 129-30 of exhibit A to their summary judgment response, they did not include page 130 of Mr. Tyler's deposition testimony in their exhibit.  Because both pages were included in defendant's exhibit C, the Court cites that exhibit.

[137]  Docket no. 42 at 3 (citing docket no. 36 at 4).

[138]  Id., exhibit A at 166-67.

[139]  Id. at 167.

[140]  Id., exhibit B.

[141]  Id.

the most effective method for treating oak wilt disease, Bartlett knew this information at the time

of the first agreement, and defendant failed to tell plaintiffs it did not provide trenching services.

But, the evidence does not suggest Bartlett intentionally withheld information to induce the

Tylers into the agreement.  Mr. Tyler admitted he discussed trenching with Mr. Hagen and does

not deny that he was told of the requirement for a one hundred foot buffer between infected and

uninfected trees.  Nor does the evidence suggest the Tylers would have refused to enter into the

agreement if Bartlett had provided different information about trenching and its services,

particularly in light of Mr. Tyler's testimony that Mr. Duff told him before he met with Mr.

Hagen and entered the agreement with defendant that trenching was the best option for treating

oak wilt disease.  Because the Tylers have failed to raise genuine issues of material fact on two

elements of their claim, namely that defendant intended to withhold information to induce

plaintiffs to enter the agreement and plaintiffs would not have entered the agreement if they had

known the withheld information, Bartlett is entitled to summary judgment on the Tylers' DTPA

claim for failure to disclose information.

### 3.     <u>Summary</u>

In sum, Bartlett was providing a professional service and is exempt from liability under

the DTPA pursuant to § 17.49(c).  Although a claim of failure to disclose is excepted from the

professional services exemption, the Tylers have failed to raise a genuine issue of material about

whether their other DTPA claims fall within one of the exceptions, including the claims raised

for the first time in their summary judgment response for unconscionable conduct and breach

express warranties.  With respect to the claim for failure to disclose, the Tylers have not

proffered evidence that raises a genuine issue of material fact about whether Bartlett intentionally

withheld information to induce them to agree to Alamo injections or whether plaintiffs would have rejected the agreement if they had known the withheld information.  Accordingly, Bartlett is entitled to summary judgment, and the Tylers' DTPA claims are dismissed.

**B.     <u>Breach of Contract</u>**

Bartlett asserts it is entitled to summary judgment on plaintiffs' claim for breach of contract and its counterclaim for breach of contract, arguing, in sum, that there are no genuine issues of material fact about any element of the claims.  Bartlett argues the summary judgment evidence conclusively establishes the existence of a series of contracts requiring defendant to perform certain services and the Tylers to pay for the services; defendant performed as required by the contracts; and plaintiffs have not paid $3,312.25 for defendant's services.[142]  Bartlett argues the Tylers cannot establish they were damaged by its performance under the contracts.[143] In response, the Tylers merely assert "[t]he evidence that supports Tyler's DTPA claims applies to his claim against Bartlett for breach of contract."[144]

To prove breach of contract the following elements must be satisfied: (1) the existence of a valid contract; (2) one party performed or tendered performance; (3) the other party breached the contract; and (4) damages occurred as a result of the breach.[145]  Bartlett has proffered evidence showing the parties entered at least four agreements for a variety of services to be

---

[142]   Docket no. 36 at 12-13.

[143]   <u>Id.</u> at 13.

[144]   Docket no. 42 at 5.

[145]   <u>McLaughlin, Inc. v. Northstar Drilling Tech., Inc.</u>, 138, S.W.3d 24, 27 (Tex. App.–San Antonio 2004, no pet.) (quoting <u>Richter v. Wagner Oil Co.</u>, 90 S.W.3d 890, 898 (Tex. App.–San Antonio 2002, no pet.)).

performed by defendant, including: root collar excavations; pruning; applying fertilizer; cleaning and disposing of debris; treating for beetles, blight, caterpillars and aphids; and injecting oaks with Alamo fungicide.[146]   Bartlett's evidence also shows defendant performed the services specified in the agreements, and the Tylers failed to make full payment for the services defendant rendered.[147]   Based on this evidence, Bartlett has established the elements of its counterclaim for breach of contract and has shown the absence of a genuine issue of material fact regarding plaintiffs' breach of contract claim.

The Tylers do not dispute the existence of the agreements, Bartlett provided a variety of services, or plaintiffs owe defendant money for services performed.  Plaintiffs cite Mr. Tyler's deposition testimony that seven oak trees were lost to oak wilt despite the treatments Bartlett provided,[148] but their conclusory statement that their evidence establishes defendant breached the agreements does not preclude summary judgment for defendant.  The Tylers have not argued or cited evidence suggesting how Bartlett breached the agreements and caused the trees to be lost to oak wilt.  In particular, the Tylers have not cited specific provisions of the agreements that Bartlett breached or proffered evidence showing the services defendant provided were not as specified in the agreements.  Because the Tylers have failed to raise genuine issues of material fact regarding their breach of contract claim or Bartlett's counterclaim for breach of contract, defendant is entitled to summary judgment on both claims.  Accordingly, the Tylers' breach of contract claim is dismissed, and Bartlett is entitled under its first amended counterclaim to

---

[146]   Docket no. 36, exhibit A at tab 2 at D 0002, D 0017, D 0021, and D 0022.

[147]   Id., exhibit A at tab 2.

[148]   Docket no. 42, exhibit A at 100.

recover the $3,312.25 owed for services defendant provided pursuant to the agreements between the parties.

**C.**   <u>**Fraud**</u>

Bartlett asserts it is entitled to summary judgment because there is no genuine issue of material fact regarding the Tylers' fraud claim.[149]  Specifically, Bartlett argues "there is no evidence that any statement made by Hagen with respect to his or Bartlett's qualifications or experience was false or that any such representations were relied upon to the Tylers' detriment."[150]  In response, the Tylers state the evidence supporting the DTPA claims also supports the fraud claim, set forth the elements of fraud, and assert "Jordy Hagen's conduct clearly was made with the intent to deceive Tyler."[151]

To establish a claim of fraud, plaintiffs must show: (1) a material representation that was false; (2) the speak knew when the representation was made that it was false or recklessly made the representation without any knowledge of its truth; (3) the speaker intended the representation should be acted upon by the other party; (4) the other party acted in reliance on the representation; and (5) the representation caused injury.[152]  The Tylers have alleged Bartlett through its agent misrepresented its expertise and qualifications for treating oak wilt disease which prevented them from making an informed decision about the treatment of their oak

---

[149]  Docket no. 36 at 16.

[150]  <u>Id.</u>

[151]  Docket no. 42 at 5.

[152]  <u>Trenholm v. Ratcliff</u>, 646 S.W.2d 927, 930 (Tex. 1983); <u>see also</u> <u>In re FirstMerit Bank</u>, 52 S.W.3d 749, 758 (Tex. 2001) (fraudulent inducement).

trees.[153]

As set forth in the discussion under the DTPA claims, the evidence, when construed in the Tylers' favor, shows Bartlett made representations about its expertise, qualifications, and success rate in treating oak wilt disease.  But, the Tylers have not proffered evidence suggesting the representations were false.[154]  Moreover, the Tylers have not controverted Bartlett's evidence showing plaintiffs could not have relied on representations regarding defendant's expertise and success rates because before the agreements were made, Mr. Hagen informed plaintiffs "there was no 'guarantee' as to the outcome or results and that the treatment was high risk,"[155] and plaintiffs were aware there is known cure for oak wilt and the disease can be fatal.[156]  Because the Tylers failed to raise a genuine issue of material fact, Bartlett is entitled to summary judgment and plaintiffs' fraud claim is dismissed.

**D.      Negligence and Negligent Misrepresentation**

With respect to the Tylers' negligence claims, Bartlett asserts entitlement to summary judgment because "it owes no legal duty to Plaintiffs separate from its obligations to perform under the contract" and "has no liability for any alleged negligence."[157]  To the extent the Tylers can establish a legal duty, Bartlett argues "the negligence claims are based on allegations that: (a) Bartlett owed [a] duty to inform [plaintiffs] of the options available; and (b) to perform the

---

[153]  Plaintiffs' original petition at ¶ 9.

[154]  See text beginning at note 113.

[155]  Docket no. 36, exhibit B at ¶ 7.

[156]  Id., exhibit C at 27 and 66.

[157]  Docket no. 36 at 13.

services in a good and workmanlike manner in accordance with industry standards."[158]  Bartlett cites evidence showing the Tylers were informed of the options for treating oak wilt disease before they contacted defendant, and Mr. Hagen discussed trenching with plaintiffs, recommending against that option.[159]  Bartlett also cites evidence showing the services provided were properly performed and accorded with industry standards.[160]  Bartlett argues there is no evidence of loss resulting from any alleged negligence.[161]

With respect to the claim for negligent misrepresentation, Bartlett argues the claim is based on the same allegations forming the basis of the fraud claim, misrepresentation of expertise and success rate in treating oak wilt disease.[162]  Bartlett argues the evidence reflects it is "well qualified and ha[s] extensive knowledge and experience in treating oak wilt," and "the reality is that oak wilt, much like cancer, is a potentially fatal disease and there is no know cure," a fact admittedly known to the Tylers.[163]  Additionally, Bartlett argues the evidence shows the Tylers could not rely on the alleged misrepresentations because they had full disclosure of the material facts relevant to the treatment of their oak trees and knew the outcome was unpredictable.[164] Finally, Bartlett argues there is no evidence showing false representations caused any loss to the

---

[158] Id.

[159] Id. at 14, exhibit A at tab 1, exhibit B at ¶¶ 4-5, exhibit C at 41 and 166

[160] Id. at 15, exhibit A at ¶ 12, exhibit B at ¶ 10; see also exhibit C at 114-15 (Mr. Tyler admitting he knew there was no guarantee and there were risks).

[161] Id. at 15.

[162] Id. at 17.

[163] Id.

[164] Id. at 17-18.

Tylers, and, assuming there is evidence of damage, any pecuniary loss is not independent of damages attributable to breach of contract.

The Tylers did not respond to Bartlett's arguments and evidence in support of summary judgment on the negligence and negligent misrepresentation claims.  As the Tylers have not controverted Bartlett's summary judgment or proffered evidence in response to defendant's no evidence arguments, plaintiffs have not raised a genuine issue of material fact about the negligence and negligent misrepresentation claims.  Accordingly, Bartlett is entitled to summary judgment and the Tylers' negligence and negligent misrepresentation claims are dismissed.

## VII.  CONCLUSION

Based on the foregoing, **IT IS ORDERED** that:

- F.A. Bartlett Tree Expert Company's motion for summary judgment[165] is **GRANTED** and the Tyler's DTPA, breach of contract, fraud, negligence, and negligent misrepresentation claims are **DISMISSED**.

- Bartlett's motion for summary judgment on its first amended counterclaim for breach of contract is **GRANTED**, and Bartlett shall recover from the Tylers the sum of $3,312.25 owed for services defendant performed.  Post-judgment interest on the foregoing amount shall be paid at the rate of 5.10 percent, compounded annually, from the date of the entry of judgment until paid.[166]

- Bartlett's objections to the Tylers' summary judgment evidence are **OVERRULED** and Bartlett's corresponding, embedded motion to strike certain

---

[165]  Docket no. 36.

[166]  The Court is cognizant that Bartlett has sought pre-judgment interest.  "In a diversity case, the federal post-judgment interest statute applies."  DP Solutions, Inc. v. Rollins, Inc., 353 F.3d 421, 435 (5th Cir. 2003).  Accordingly, post-judgment interest accrues at the rate specified in 28 U.S.C. § 1961(a).  On the other hand, pre-judgment interest is governed by Texas law.  Bartlett has cited no Texas authority establishing how pre-judgment interest is to be calculated or that the Court must award pre-judgment interest on a breach of contract claim.  For that reason, pre-judgment interest has not been awarded.

of plaintiffs' summary judgment is **DENIED.**[167]

Any relief not expressly granted is **DENIED**.  The Clerk shall enter judgment in favor of defendant and against the Tylers, each side to bear its own costs.

**ORDERED, SIGNED and ENTERED this 11th day of August, 2006.**

**PAMELA A. MATHY**
**UNITED STATES MAGISTRATE JUDGE**

---

[167]  Docket no. 43.